OPINION OF THE COURT
Daniel P. Conviser, J.
Nicholas T. is the subject of a petition for sex offender civil management pursuant to article 10 of the Mental Hygiene Law. The respondent moves here to preclude or in the alternative conduct a Frye hearing (see Frye v United States, 293 F 1013 [DC Cir 1923]) with respect to three diagnoses proffered by the State’s two experts in this case: other specified para-philic disorder (OSPD), non-consent (Non-Consent); unspecified paraphilic disorder (USPD); and the diagnosis or specifier psychopathy or psychopathic traits. That motion is opposed by the State.
For the reasons stated infra the respondent’s motion to preclude the use of the “Non-Consent” diagnosis is granted; the motion to preclude or conduct a Frye hearing on the diagnosis or specifier of psychopathy or psychopathic traits is denied; and the motion to preclude or conduct a Frye hearing on the USPD diagnosis is granted to the extent of ordering a Frye hearing.
Nicholas T. was convicted by guilty plea of burglary in the first degree, attempted rape in the first degree and other charges in 1992 and received an indeterminate prison term for those convictions of 12 to 24 years in prison. Mr. T. was previously convicted of attempted rape in the first degree at the age *886 of 16 and received an indeterminate 3 to 9 year sentence. He also has a juvenile sex offense history and sexual misconduct disciplinary infractions while incarcerated.
Preclusion of the “Other Specified Paraphilic Disorder (OSPD) Non-Consent” Diagnosis
State’s expert Dr. Frances Charder has diagnosed Mr. T. with “Other Specified Paraphilic Disorder (‘OSPD’) Paraphilic Coercive Disorder.” In Matter of State of New York v Kareem M. (51 Misc 3d 1205[A], 2016 NY Slip Op 50427[U], *1 [Sup Ct, NY County 2016]) this court concluded after an extended Frye hearing that the diagnosis “Other Specified Paraphilic Disorder (‘OSPD’), arousal to non-consenting persons” had not gained general acceptance in the relevant psychiatric community. The court noted that this diagnosis had also been referred to by a number of equivalent terms including OSPD Non-Consent, its predecessor term paraphilia not otherwise specified (Paraphilia NOS) non-consent, biastophilia, paraphilic coercive disorder, paraphilic rapism or simply non-consent. In Kareem M. this court also outlined how a second trial court, after conducting a Frye hearing which considered much of the same evidence, had reached the same conclusion. (See Matter of State of New York v Jason C., 51 Misc 3d 553 [Sup Ct, Kings County 2016, Riviezzo, J.].)[1]
This court adheres to its previous decision in State v Kareem M. The State’s expert will be precluded from relying upon or recounting to the jury a Non-Consent diagnosis (or any of its equivalents). As the State points out in its motion, however, the State’s experts will be permitted to discuss Mr. T.’s allegedly coercive sexual behaviors, indicate how those behaviors have informed their opinions and indicate how those behaviors might support other diagnoses.
Preclusion or the Conduct of a Frye Hearing Regarding the Diagnosis of Psychopathy
The respondent’s motion to preclude or conduct a Frye hearing regarding the diagnosis or specifier of psychopathy or psychopathic traits is denied. State’s expert Dr. Stuart Kirsch-ner has diagnosed Mr. T. with antisocial personality disorder (ASPD) with psychopathy. Dr. Charder has opined that Mr. T. *887 has ASPD with psychopathic traits. She also asserts Mr. T. has the dynamic risk factor: “Psychopathy/Psychopathy Combined with Sexual Deviance.”[2] Three trial courts have conducted Frye hearings or otherwise ruled on whether the PCL-R (the Psychopathy Checklist Revised), an instrument generally used to diagnose psychopathy, has achieved general acceptance. In State of New York v Marcello Aiello (Sup Ct, Suffolk County, 2016, Hinrichs, J., index No. 16768-14) and State of New York v Roderick Lancaster (Sup Ct, Dutchess County, 2016, Forman, J., index No. 5545-13), the court found the instrument was generally accepted. In State of New York v Ramel Jones (Sup Ct, Westchester County, 2015, Cacace, J., index No. 13-00989) the court denied the respondent’s motion to preclude or conduct a Frye hearing concerning the State’s proposed use of the PCL-R.
This court agrees with the conclusions in these decisions. The question here is somewhat different. These three cases analyzed whether the scoring instrument used to assess psychopathy was generally accepted. The question here is whether the psychopathy (or psychopathic traits) diagnosis or specifier is generally accepted.
This court conducted a detailed discussion of the psychopathy diagnosis in its recent decision in Matter of State of New York v Gary K. (53 Misc 3d 1207[A], 2016 NY Slip Op 51465 [U] [Sup Ct, NY County 2016]). Psychopathy is a condition which is asserted in the DSM-5 to be synonymous with the generally accepted diagnosis of ASPD, although it has also often been called an “extreme form” of ASPD or described with other related formulations. (2016 NY Slip Op 51465[U], *15-18; DSM-5 at 659.)[3] The psychopathy diagnosis is routinely made by psychologists and psychiatrists evaluating article 10 respondents in New York. New York’s appellate courts, moreover, while never analyzing the general acceptance of psychopathy or the PCL-R, have discussed and affirmed judgments which included psychopathy diagnoses in numerous cases.
*888 In Matter of State of New York v Dennis K. (27 NY3d 718, 750 [2016]) the Court held that the diagnoses assigned to respondent Richard TT., which included psychopathy, were valid article 10 predicates. In Matter of State of New York v Jerome A. (137 AD3d 557 [1st Dept 2016]), the Court reversed a holding of this court finding there was not probable cause to believe the respondent was a sex offender requiring civil management under article 10. The respondent had been diagnosed by the State’s expert with ASPD and psychopathy. In Matter of State of New York v Donald DD. (24 NY3d 174 [2014]) (in the Donald DD. portion of the decision), the Court of Appeals held that a diagnosis of ASPD alone was an insufficient article 10 predicate and dismissed the petition for that reason. In Jerome A., however, the Court found the petition sufficient because, in addition to being diagnosed with ASPD, the respondent was also diagnosed with psychopathy. In other words, it was the diagnosis of psychopathy which transformed a petition which would have been invalid on its face (under Donald DD.) to a petition which was legally sufficient. Obviously, inherent in that decision was the finding that psychopathy was a valid diagnosis. No Frye hearing was requested in that case. Other appellate courts have reached similar conclusions. (See e.g. Matter of State of New York v Ezikiel R., 147 AD3d 959 [2d Dept 2017] [diagnoses of ASPD, psychopathy and other conditions legally sufficient to sustain article 10 petition]; Matter of State of New York v Richard L., 143 AD3d 519 [1st Dept 2016] [similar]; Matter of Suggs v State of New York, 142 AD3d 1283, 1284 [4th Dept 2016] [diagnosis of ASPD plus “psychopathic traits” sufficient to constitute mental abnormality under article 10].)
These decisions reflect the fact that although significant criticisms have been leveled at the PCL-R (see e.g. State v Gary K., 2016 NY Slip Op 51465 [U], *16) and there continues to be debate about the precise definition of psychopathy (id.; Matter of State of New York v Kevin F., 51 Misc 3d 911 [Sup Ct, Kings County 2016, Riviezzo, J.]), both the diagnosis and the instrument generally used to measure it are generally accepted.
The respondent argues that these diagnoses or specifiers should be rejected because, although psychopathy is noted in the DSM-5 as being a synonym for ASPD, it is also the subject of a more extended discussion and analysis under the DSM-5 section: “Alternative DSM-5 Model for Personality Disorders.” That section of the DSM-5 provides “a new approach that aims to address numerous shortcomings of the current approach to *889 personality disorders” and provides alternative criteria for a number of disorders including ASPD and psychopathy. (DSM-5 at 761.) The respondent argues that both of the State’s experts appear to have placed significant reliance on this “alternative” DSM-5 model in their diagnosis or specifier of psychopathy or psychopathic traits and asserts this must lead to the conclusion that these findings are not generally accepted or at least merit a Frye hearing. This court does not agree.
There is nothing invalid, in this court’s view, in the reliance by an expert, in part, on the alternative DSM-5 model for personality disorders. Indeed, the DSM-5 itself, as noted supra, indicates that the alternative model is designed to address deficiencies in the existing DSM-5 approach to such disorders. In this court’s view, although the DSM-5’s alternative diagnoses can be validly characterized as “emerging” and warranting “further study” (see DSM-5 at 731), that does not mean psychiatric experts may not rely, in part, on such diagnostic criteria in forming their expert opinions.
The respondent also argues the term “psychopathy” should be precluded because it is unduly prejudicial. But there are many diagnoses used in article 10 cases which have significant negative connotations. That is because, like psychopathy, many article 10 diagnoses describe generally abhorred personality traits or behaviors. That does not make such terms unduly prejudicial or preclude psychiatric experts from using the terms the psychiatric profession has designated to describe accepted diagnostic conditions.
Motion to Preclude or Conduct a Hearing on “Unspecified Para-philic Disorder”
Dr. Kirschner has diagnosed Mr. T. with unspecified para-philic disorder. The DSM-5 section on “paraphilic” (or sexual) disorders includes this diagnosis and describes it as follows:
“This category applies to presentations in which symptoms characteristic of a paraphilic disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the para-philic disorders diagnostic class. The unspecified paraphilic disorder category is used in situations in which the clinician chooses not to specify the reason that the criteria are not met for a specific para-philic disorder, and includes presentations in which *890 there is insufficient information to make a more specific diagnosis.” (DSM-5 at 705.)
The USPD diagnosis is distinguished from the diagnosis of “Other Specified Paraphilic Disorder” or “OSPD.” The OSPD category applies where a clinician determines a person has a paraphilic disorder other than one of the disorders with specific criterion sets in the DSM-5 and is used with a specifier indicating what the OSPD diagnosis is. Thus, for example, a person might be diagnosed with “OSPD—necrophilia” (a paraphilia involving the sexual arousal to corpses), or “OSPD—urophilia” (a paraphilia involving a sexual arousal to urine). (See DSM-5 at 705.) In contrast, USPD diagnoses do not include specifiers.
The “unspecified” and “other specified” categories for para-philias which are provided by the USPD and OSPD diagnoses are also applicable to other DSM disorder categories. Thus, one might be diagnosed with an unspecified personality disorder or an unspecified neurocognitive disorder. Moreover, the DSM indicates that clinicians have a great deal of leeway in deciding whether to assign the “other specified” or alternatively the “unspecified” designation to a given presentation:
“Note that the differentiation between other specified and unspecified disorders is based on the clinician’s decision, providing maximum flexibility for diagnosis. Clinicians do not have to differentiate between other specified and unspecified disorders based on some feature of the presentation itself. When the clinician determines that there is evidence to specify the nature of the clinical presentation, the other specified diagnosis can be given. When the clinician is not able to further specify and describe the clinical presentation, the unspecified diagnosis can be given. This is left entirely up to clinical judgment.” (DSM-5 at 15-16.)
The respondent argues that the USPD diagnosis should be precluded since a diagnosis which is so lacking in support and specificity that it cannot even be assigned an “other specified” designation offends the due process to which article 10 respondents are entitled. (See Kansas v Hendricks, 521 US 346, 373 [1997, Kennedy, J., concurring] [“if it were shown that mental abnormality is too imprecise a category to offer a solid basis for concluding that civil detention is justified, our precedents *891 would not suffice to validate it”].)[4] He also cites multiple authorities for the proposition that the USPD diagnosis is not generally accepted in the psychiatric community, at least in forensic settings.
This court is aware of one New York trial court which has conducted a Frye hearing on the USPD diagnosis. (Matter of State of New York v Harris, 48 Misc 3d 950 [Sup Ct, Bronx County 2015, Gross, J.].) The Harris court found the diagnosis was generally accepted. Justice Gross held that “[t]he very inclusion of unspecified paraphilia as a disorder in [the] DSM-5 is indicative of its general acceptance within the psychiatric and psychological community.” (48 Misc 3d at 960.) He then conducted a thorough analysis of the significance of the USPD’s inclusion in the DSM, refuted the respondent’s contrary arguments and outlined how his decision was consistent with the Court of Appeals’ article 10 holdings.
The Harris court disagreed with the respondent’s argument that while USPD might be generally accepted in clinical settings, it was not generally accepted in forensic contexts asserting that “issues regarding the application of this disorder— whether as clinical or forensic diagnosis—do not affect admissibility under Frye. The only issue for this court’s resolution pursuant to Frye is whether unspecified paraphilic disorder is generally accepted as a reliable diagnosis in the psychiatric and psychological community.” (Id. at 965-966.) It is on that point that this court parts company with the conclusions in Harris.
First, as this court outlined in its two recent decisions after extended Frye hearings on article 10 paraphilia diagnoses (State v Kareem M. and State v Ralph P.) the relevant scientific community which must be assessed in article 10 Frye hearings is not psychiatrists and psychologists generally. The community which is most appropriately used to gauge general acceptance in article 10 Frye hearings is psychologists and psychiatrists who have, as a meaningful part of their practice, the evalua *892 tion, diagnosis or treatment of sex offenders or perform research in the field. (State v Kareem M., 2016 NY Slip Op 50427[U], *27; State v Ralph P., 53 Misc 3d at 532-533; see generally People v Wesley, 83 NY2d 417, 438 [1994, Kaye, Ch. J., concurring].)
There is also no rule, in this court’s view (and the Harris court did not cite any precedent in support of one), that because a diagnostic designation may be generally accepted in clinical practice, it must also have received general acceptance in forensic settings. In fact, the DSM-5 makes the contrary point in its “Cautionary Statement for Forensic Use of DSM-5”:
“[I]t is important to note that the definition of mental disorder included in [the] DSM-5 was developed to meet the needs of clinicians, public health professionals, and research investigators rather than all of the technical needs of the courts and legal professionals. . . .
“[T]he use of [the] DSM-5 should be informed by an awareness of the risks and limitations of its use in forensic settings. When DSM-5 categories, criteria, and textual descriptions are employed for forensic purposes, there is a risk that diagnostic information will be misused or misunderstood. These dangers arise because of the imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis.” (DSM-5 at 25.)
The use of the USPD diagnosis in clinical settings and under article 10 is very different. It is one thing to assign a USPD diagnosis where a clinician has insufficient information to diagnose a specific paraphilia but opts to assign a diagnosis anyway, for treatment, insurance coverage or other reasons. It is quite another to use such a designation when it may result in lifetime confinement. The Court of Appeals made the same point in State v Shannon S., noting that “in the civil confinement arena, there will undoubtedly be an imperfect fit between the questions of ultimate concern to the law and the information contained in [the DSM’s] clinical diagnosis” (20 NY3d at 106 [internal quotation marks and citation omitted]; see also People v Megnath, 27 Misc 3d 405, 411 [Sup Ct, Queens County 2010, Hanophy, J.] [concluding that low copy number DNA testing performed by the New York City medical examiner is “generally accepted as reliable in the forensic scientific community” (emphasis added)]).
*893 Indeed, the USPD designation might be applied in any case where a court found an OSPD designation with a specifier was not generally accepted, thereby potentially effectively negating any judicial determination that an OSPD diagnosis with a specifier was invalid. Thus, if, for example, a court held (as this court and another has) that the Non-Consent diagnosis was not generally accepted, an expert might simply instead call the same diagnosis USPD. This would seem clearly permissible under the DSM-5 passage (DSM-5 at 15) cited supra. Whether a diagnosis like this would be generally accepted in the forensic sex offender psychiatric community, however, is not clear.
In this court’s view, therefore, the question with respect to the USPD diagnosis in article 10 cases is whether that diagnosis is generally accepted for forensic use by psychiatrists and psychologists in the sex offender field. That question has never been addressed, as far as this court is aware, in a New York State Frye hearing.[5] To the extent any of the parties disagree with how this court has framed the Frye issue, they may address it during the Frye hearing.
There is a strong argument that a Frye hearing would be required in this case even absent this court’s conclusion that one is appropriate. In Matter of State of New York v Hilton C. (140 AD3d 1176 [2d Dept 2016]) the Second Department reversed a mental abnormality judgment because the trial court denied the respondent’s motion to conduct a Frye hearing on the identical USPD diagnosis at issue here. The Hilton C. Court did not cite Harris, although Harris is a reported decision which was published more than a year before Hilton C. In Hilton C. the Court found it significant that USPD was the “primary diagnosis” which had resulted in the respondent’s mental abnormality. (Id. at 1178.) That does not appear to be true in the instant case. The degree to which a diagnosis would or would not be the “primary” one used to support a mental abnormality verdict at a trial, however, should not control whether a Frye hearing should be ordered on it.
*894 The Second Department also reversed a mental abnormality judgment in 2015 in another case where the trial court declined to conduct a Frye hearing on a variant of the “Non-Consent” diagnosis this court found was not generally accepted following a Frye hearing in State v Kareem M. (See Matter of State of New York v Richard S., 133 AD3d 672 [2d Dept 2015].)[6] On the other hand, the Third Department recently affirmed a trial court judgment at an article 10 annual review hearing holding the respondent continued to be a dangerous sex offender requiring confinement where one of the respondent’s five diagnoses was USPD, although there was no indication in that case that a Frye hearing on the USPD diagnosis was requested. (Matter of Rene I. v State of New York, 146 AD3d 1056 [3d Dept 2017].)
There are thus both significant due process and general acceptance questions regarding USPD diagnoses in article 10 cases. Both issues are closely related. But, in this court’s view, it makes sense to address the general acceptance question first. If the USPD diagnosis is not generally accepted, then the due process issue would be moot. It would also not be appropriate, in this court’s view, to consider a constitutional due process challenge to the USPD diagnosis when the court has not yet determined whether the diagnosis is generally accepted.
For all of those reasons, the respondent’s motion to conduct a Frye hearing on whether the USPD diagnosis has been generally accepted in the relevant scientific community is granted.

. On the other hand, the trial court in the case of Matter of Patrick L. (52 Misc 3d 753 [Sup Ct, St. Lawrence County 2016]), in finding that the respondent at an annual review hearing continued to be a dangerous sex offender requiring confinement, disagreed with these holdings and declined to follow them. The Patrick L. court did not conduct a Frye hearing.

. Report of Dr. Frances Charder, Apr. 11, 2016 at 26.

. The DSM-5 is the most recent (5th) edition of the “Diagnostic and Statistical Manual of Mental Disorders.” This court discussed the history and significance of the DSM in its decisions in State v Kareem M. (2016 NY Slip Op 50427[U], *2-3) and Matter of State of New York v Ralph P. (53 Misc 3d 496, 502-504 [Sup Ct, NY County 2016]). The DSM has been called the “Bible of mental disorders” and “the institutional embodiment for the consensus of main treatment and psychiatric opinion in the United States.” (State v Kareem M., 2016 NY Slip Op 50427 [U], *2-3, quoting testimony of Dr. David Thornton.)

. The Court of Appeals did address this due process issue in its decision in Matter of State of New York v Shannon S. (20 NY3d 99 [2012]) but that case concerned the diagnosis of “Paraphilia Not Otherwise Specified” (Paraphilia NOS) under the DSM edition published prior to the DSM-5, the DSM-4-TR. (See State v Kareem M., 2016 NY Slip Op 50427[U], * 2-3 [discussing the differences between Paraphilia NOS under the DSM-4-TR and OSPD and USPD under the DSM-5].) In Shannon S. the Court said that Paraphilia NOS “has been found to be a viable predicate mental disorder or defect that comports with minimal due process” (20 NY3d at 107 [citations omitted]).

. In State v Kareem M., this court, in dicta, noted that it agreed with the Harris court that the USPD diagnosis had been generally accepted in the psychiatric community. (2016 NY Slip Op 50427[U], *19.) This court continues to agree that the general “unspecified” diagnostic category (including the USPD diagnosis) is generally accepted in clinical settings. This court has concluded after considering the instant motion, however, that a hearing is necessary to determine whether the USPD diagnosis is generally accepted in forensic settings by members of the sex offender psychiatric community.

. As this court noted in its decision in State u Kareem M., comments which seemed to point to the desireability of Frye hearings for article 10 diagnoses by the Court of Appeals in State v Donald DD. (24 NY3d at 187) and State v Shannon S. (20 NY3d at 110-111 [Smith, J., dissenting]) as well as decisions like Richard S. (and now Hilton C.) have spawned a wave of often duplicative, extended article 10 Frye hearings throughout the State. (See State v Kareem M., 2016 NY Slip Op 50427[U], *20 n 25 [noting the conduct of 16 individual article 10 Frye hearings as of the date of the decision in March of 2016].)