■ AIDA LIPSCHITZ, Appellant-Respondent, v ARNOLD J. STEIN, Respondent-Appellant. [884 NYS2d 442]—

In an action to recover damages for medical malpractice, etc., the plaintiff appeals, as limited by her brief, from (1) so much of an order of the Supreme Court, Kings County (Levine, J.), dated January 3, 2006, as denied those branches of her motion which were to compel the further deposition of the defendant, and to disqualify the defendant's attorney, and granted that branch of the defendant's cross motion which was for a *Frye* hearing (*see Frye v United States*, 293 F 1013, 1014 [1923]), and (2) so much of an order of the same court dated June 30, 2006, as, upon reargument, adhered to the original determination, and the defendant cross-appeals, as limited by his brief, from stated portions of the order dated June 30, 2006, which, inter alia, denied that branch of his cross motion which was for summary judgment dismissing the complaint.

Ordered that the appeal from the order dated January 3, 2006, is dismissed, as that order was superseded by the order dated June 30, 2006, made upon reargument; and it is further,

Ordered that on the Court's own motion, the appeal from the portion of the order dated June 30, 2006, which, upon reargument, adhered to so much of the original determination in the order dated January 3, 2006, as denied that branch of the plaintiff's motion which was to compel the further deposition of the defendant is dismissed, as that portion of the order is not appealable as of right and leave to appeal has not been granted (*see Friedberg v Citiwide Auto Leasing, Inc.*, 8 AD3d 336 [2004]; *Garcia v Jomber Realty*, 264 AD2d 809 [1999]); and it is further,

Ordered that the order dated June 30, 2006 is modified, on the law, by deleting the provision thereof, upon reargument, adhering to so much of the original determination in the order dated January 3, 2006, as granted that branch of the defendant's cross motion which was for a *Frye* hearing, and substituting therefor a provision, upon reargument, vacating so much of the order dated January 3, 2006, as granted that branch of the cross motion, and thereupon denying that branch of the cross motion; as so modified, the order dated June 30, 2006 is affirmed insofar as reviewed; and it is further,

Ordered that the order dated June 30, 2006 is affirmed insofar as cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

On November 10, 1997 Menachem Lipschitz, now deceased (hereinafter the decedent), underwent surgery performed by the defendant, Dr. Arnold J. Stein, to remove a cataract from his left eye. Although he woke up at home that night at 9:00 P.M. with severe pain, headache, nausea, and vomiting, he did not return to the doctor's office until the next morning, allegedly at 9:00 A.M. The defendant did not see the decedent until approximately 10:45 A.M., at which time the defendant administered medication and removed fluid from the eye in an effort to reduce pressure in it. The defendant failed to diagnose what was later found to be the cause of the symptoms— endophthalmitis caused by an organism identified as bacillus cereus, an extremely aggressive bacteria. When the disease was diagnosed by doctors at Mount Sinai Hospital later that day, the decedent's vision could not be saved, and he underwent an evisceration of the eye two days later. This medical malpractice action ensued.

After trial, the jury found in the defendant's favor. As relevant here, the Supreme Court denied the decedent's motion to set aside the verdict as against the weight of the evidence and for a new trial. On his appeal from the ensuing judgment dismissing the complaint, finding that there had been "errors committed at the trial which could have affected the verdict and therefore [could not] be considered harmless" (*Lipschitz v Stein,* 10 AD3d 634, 635 [2004]), this Court reversed, reinstated the complaint against the defendant, and granted the motion for a new trial.

Now, after extensive motion practice in the Supreme Court following our prior decision, the case is before us again with Aida Lipschitz substituted for the decedent as the plaintiff.

The plaintiff contends that the Supreme Court improvidently exercised its discretion in granting that branch of the defen-

dant's cross motion which was for a *Frye* hearing (*see Frye v United States,* 293 F 1013 [1923]). We agree.

"The long-recognized rule of *Frye v United States* . . . is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance' in its specified field" (*People v Wesley,* 83 NY2d 417, 422 [1994], quoting *Frye v United States,* 293 F at 1014; *see People v Wernick,* 89 NY2d 111, 115-116 [1996]).

The sole ground of that branch of the defendant's cross motion which was for a *Frye* hearing was his contention that the theory of causation advanced by the plaintiff's expert was novel. According to defense counsel and the defendant's expert, the plaintiff's theory was that the vision in the decedent's left eye "could have been recaptured when he presented to Dr. Stein's office on November 11, 1997[,] twenty-four hours following cataract surgery," and that the defendant's failure to treat the patient's endophthalmitis with antibiotics at that time caused the decedent's left-eye vision loss and ultimate evisceration.

In fact, Dr. Rene Rodriguez-Sains, the plaintiff's expert witness at the trial, never stated that the decedent's injuries could have been prevented by administering antibiotics on November 11, 24 hours after the cataract surgery. What he actually stated was that, based on the decedent's testimony, the decedent still retained some vision in his left eye when he arrived at the defendant's office on November 11, 1997, indicating that had the endophthalmitis been treated right away in an appropriate manner, which at that point meant with surgery, not antibiotics, there was an approximately 50% chance that some vision could have been salvaged. At trial, the defendant's expert agreed with that statement. Moreover, Dr. Rodriguez-Sains never testified that antibiotics should have been administered on November 11, but, rather, that on November 10, immediately after cataract surgery was completed, a broad spectrum antibiotic should have been injected into the decedent's eye. Another defense expert acknowledged, on cross-examination, that he would have injected subconjunctival antbiotics immediately following cataract surgery, rather than use a collagen shield, as the defendant had done.

Since the theory characterized by the defendant and his expert as "novel" was never actually put forward by the plaintiff or the plaintiff's expert, the defendant's request for a *Frye* hearing on that basis should have been denied. What remains of the statements in the defendant's expert's affidavit is the expert's simple disagreement with Dr. Rodriguez-Sains' conclusions that (1) some vision still remained in the left eye on the morning of

November 11, and (2) at that point, there was a chance immediate and appropriate medical intervention could have salvaged some vision in the eye. However, "*Frye* is not concerned with the reliability of a certain expert's conclusions, but instead with whether the [expert's] deductions are based on principles that are sufficiently established to have gained general acceptance as reliable" (*Nonnon v City of New York,* 32 AD3d 91, 103 [2006], *affd* 9 NY3d 825 [2007] [internal quotation marks and citation omitted]; *see Marsh v Smyth,* 12 AD3d 307, 308 [2004]). Here, "[t]he defendant's factual disagreement with [plaintiff's] causation theory did not require a *Frye* hearing" (*Lustenring v AC&S, Inc.,* 13 AD3d 69, 70 [2004]).

Accordingly, the Supreme Court should have denied that branch of the defendant's motion which was for a *Frye* hearing.

The Supreme Court providently exercised its discretion in denying that branch of the plaintiff's motion which was to disqualify the defendant's attorney. "A party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing that disqualification is warranted. While the right to choose one's counsel is not absolute, disqualification of legal counsel during litigation implicates not only the ethics of the profession but also the parties' substantive rights, thus requiring any restrictions to be carefully scrutinized. The party seeking to disqualify a law firm or an attorney bears the burden to show sufficient proof to warrant such a determination" (*Gulino v Gulino,* 35 AD3d 812, 812 [2006] [citations omitted]; *see Petrossian v Grossman,* 219 AD2d 587, 588 [1995]). The plaintiff failed to submit evidence sufficient to sustain her burden of demonstrating that disqualification is warranted in this case (*see Gulino v Gulino,* 35 AD3d at 812).

The Supreme Court properly denied the defendant's cross motion for summary judgment, as he failed to make a prima facie showing demonstrating entitlement to judgment as a matter of law (*see generally Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]).

The defendant's remaining contentions are either not properly before us or without merit. Dillon, J.P., Miller, Leventhal and Chambers, JJ., concur. [*See* 2006 NY Slip Op 30119(U).]