■ SHAVON ELLIS et al., Appellants-Respondents, v KENNETH ENG et al., Respondents, and GEORGE GUSSET, Respondent-Appellant, et al., Defendants. [895 NYS2d 462]—

In an action to recover damages for wrongful death and pain

and suffering allegedly arising from medical malpractice, (1) the plaintiffs appeal, as limited by their brief, from (a) so much of an order of the Supreme Court, Kings County (Dabiri, J.), dated July 17, 2008, as granted those branches of the motion of the defendants Kenneth Eng, Delphic Surgical Associates, P.C., New York University Medical Center, and Jed Kaminetsky which were for summary judgment dismissing the causes of action based upon failure to refer the plaintiffs' decedent to an oncologist, failure to properly monitor the decedent for the recurrence of cancer, and failure to obtain the decedent's informed consent to forgo adjuvant therapy after surgery insofar as asserted against Kenneth Eng and Delphic Surgical Associates, P.C., and granted those branches of the separate motion of the defendant George Gusset which were for summary judgment dismissing the causes of action based upon failure to obtain the decedent's informed consent to forgo adjuvant therapy and failure to refer the decedent to an oncologist insofar as asserted against him, and (b) so much of an order of the same court dated March 25, 2009, as denied their motion for leave to renew and reargue, and granted the cross motion of Kenneth Eng and Delphic Surgical Associates, P.C., for reargument, and upon reargument, vacated the original determination denying those branches of the motions which were for summary judgment dismissing the cause of action alleging failure to recommend that the decedent receive adjuvant therapy insofar as asserted against Kenneth Eng, Delphic Associates P.C., and George Gusset, granted those branches of the motions, and directed dismissal of that cause of action against Kenneth Eng, Delphic Associates P.C., and George Gusset, and (2) the defendant George Gusset cross-appeals from so much of the order dated July 17, 2008, as denied that branch of his motion which was for summary judgment dismissing the cause of action based upon failure to properly monitor the decedent for the recurrence of cancer insofar as asserted against him. The cross-appeal by George Gusset from so much of the order dated July 17, 2008, as denied that branch of his motion which was for summary judgment dismissing the cause of action based upon failure to properly monitor the decedent for the recurrence of cancer insofar as asserted against him brings up for review so much of the order dated March 25, 2009, as, in effect, upon reargument, adhered to the original determination denying that branch of his motion which was for summary judgment dismissing that cause of action insofar as asserted against him (*see* CPLR 5517).

Ordered that the appeal by the plaintiffs from so much of the order dated March 25, 2009, as denied that branch of their motion which was for leave to reargue is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the cross appeal by George Gusset from the order dated July 17, 2008, is dismissed, as the portion of that order cross-appealed from by him was superseded by so much of the order dated March 25, 2009, as, in effect, upon reargument, adhered to the original determination denying that branch of his motion which was for summary judgment dismissing the cause of action based upon failure to properly monitor the decedent for the recurrence of cancer insofar as asserted against him; and it is further,

Ordered that the order dated July 17, 2008, is affirmed insofar as appealed from by the plaintiffs; and it is further,

Ordered that the order dated March 25, 2009, is affirmed insofar as reviewed; and it is further,

Ordered that the defendants Kenneth Eng and Delphic Surgical Associates, P.C., are awarded one bill of costs, payable by the plaintiffs and George Gusset.

On May 1, 2002, the defendant George Gusset performed a colonoscopy on the decedent, and found a cancerous lesion. He referred the decedent to the defendant Kenneth Eng, a gastrointestinal surgeon. On May 21, 2002, Eng removed the lesion, which was diagnosed as stage IIB colon cancer. On June 7, 2002, Eng advised Gusset that the decedent would not require adjuvant therapy (chemotherapy).

In August, September, and October 2002, the decedent continued to see Gusset, who monitored his general physical condition, ordered blood tests, and purportedly was monitoring him for the recurrence of cancer. Gusset did not advise chemotherapy. On October 3, 2002, Gusset recommended that the decedent return to work with no restrictions. Thereafter, the decedent did not see Gusset for more than a year.

The decedent continued to see Eng through November 2003, for the monitoring of his surgical wound. On December 1, 2003, the decedent returned to Gusset, and shortly thereafter was diagnosed with inoperable cancer of the colon. The decedent died on May 4, 2004.

The administrator of the decedent's estate, in that capacity and individually, commenced the instant action on April 28, 2005, against, among others, Eng, Eng's professional corporation, Delphic Surgical Associates, P.C. (hereinafter Delphic Surgical), and Gusset. The plaintiff alleged that Eng and Gusset departed from accepted standards of medical care by failing to recommend that the decedent receive adjuvant therapy, failing to obtain the decedent's informed consent to forgo such therapy, failing to refer the decedent to an oncologist for follow-up care,

and failing to properly monitor the decedent for the recurrence of cancer.

Eng, Delphic Surgical, New York University Medical Center, and Jed Kaminetsky moved for summary judgment, and Gusset separately moved for summary judgment. The order appealed from dated July 17, 2008, inter alia, granted summary judgment dismissing the causes of action against Eng, Delphic Surgical, and Gusset based upon a failure to obtain the decedent's informed consent to forgo adjuvant therapy, and failure to refer the plaintiffs' decedent to an oncologist for follow-up care, but denied summary judgment on the cause of action alleging failure to recommend adjuvant therapy on the ground that the plaintiff raised a triable issue of fact on that issue. Summary judgment dismissing the cause of action alleging failure to properly monitor the decedent for the recurrence of cancer was granted with respect to Eng and Delphic Surgical on the ground that referring the decedent to Gusset for follow-up care was sufficient. However, the Supreme Court found that Gusset failed to establish his entitlement to judgment as a matter of law with respect to that cause of action.

The second order appealed from, dated March 25, 2009, inter alia, granted the motion of Eng and Delphic Surgical for reargument, and upon reargument, granted summary judgment dismissing the cause of action alleging failure to recommend adjuvant therapy against Eng, Delphic Surgical, and Gusset.

The elements of a cause of action sounding in medical malpractice are that there was a deviation or departure from good and accepted medical practice and that such a deviation or departure was a proximate cause of injury or damage (*see Luu v Paskowski*, 57 AD3d 856, 857 [2008]). On a motion for summary judgment dismissing the complaint, a defendant has the burden of establishing the absence of a departure from good and accepted practice, or, if there was a departure, that the plaintiff was not injured thereby. Once that burden has been met, a plaintiff in opposition must submit the affidavit of a physician attesting to a departure from good and accepted medical practice and that the alleged departure was a competent producing cause of the plaintiff's injuries (*see Luu v Paskowski*, 57 AD3d at 857; *Taylor v Nyack Hosp.*, 18 AD3d 537, 538 [2005]).

In support of their separate motions for summary judgment, Eng, Delphic Surgical, and Gusset established their prima facie entitlement of judgment as a matter of law by submitting evidence demonstrating that they did not depart from accepted standards of medical practice by their failure to recommend

adjuvant therapy after the decedent's surgery, failure to obtain his informed consent for forgoing adjuvant therapy, and failure to refer him to an oncologist. Their submissions included, inter alia, evidence that the clinical practice guidelines of the American Society of Clinical Oncology in 2002 did not support the use of adjuvant therapy for stage II colon cancer. In opposition, the plaintiffs failed to raise a triable issue of fact.

The plaintiffs contend that they were not required to show that clinical practice guidelines required the recommendation of chemotherapy, since clinical practice guidelines "are merely one method of informing the opinion of a qualified medical expert." Although, in general, evidence of guidelines is not conclusive, and such evidence is not a necessary element of a plaintiff's proof (see Hinlicky v Dreyfuss, 6 NY3d 636, 645 n 5 [2006]), in this case, the plaintiffs' experts relied on guidelines.

The plaintiffs' surgical expert claimed that, since 2000, the American Society of Clinical Oncology recommended chemotherapy for stage II patients with at least one poor prognostic indicator. Since the surgical expert's specialty was laparoscopic, trauma, and general surgery—not cancer surgery or gastrointestinal surgery—the expert was required to lay a foundation in support of the reliability of the opinions rendered (see Mustello v Berg, 44 AD3d 1018, 1019 [2007]), and could not rely upon conclusory assertions (see Romano v Stanley, 90 NY2d 444, 452 [1997]). Since the foundation for the expert's opinion was the guidelines cited, the validity of the expert's opinion was dependent on the validity of those guidelines. The plaintiffs' second expert—an oncologist—also referred to guidelines—this time of the "American Cancer Association [sic]"—which were not produced, and which the expert for Eng and Delphic Surgical claimed did not exist. Therefore, the guidelines of the American Society of Clinical Oncology were crucial to the plaintiffs' position.

The purported guidelines of the American Society of Clinical Oncology for 2000 are not in the record. The recommendations of the American Society of Clinical Oncology for 2004 are in the record. Those recommendations stated that even in 2004, there was no definite consensus that adjuvant therapy was warranted for high-risk stage II colon cancer patients. Thus, there was no proper basis for the opinion that failure to recommend adjuvant therapy in 2002 was a departure from accepted medical practice.

The plaintiffs further contend that a Frye hearing (see Frye v United States, 293 F 1013 [DC Cir 1923]), would be appropriate to ascertain the reliability of the plaintiffs' evidence that chemotherapy should have been recommended. A Frye hearing

is used to determine whether the expert's methodologies in arriving at a conclusion are accepted as reliable within the scientific community; for example, whether the expert's methodologies in determining the stage of the patient's cancer are sufficiently accepted as reliable to permit the expert to testify as to his or her results (*see Page v Marusich*, 51 AD3d 1201 [2008]). However, where, as here, the challenge is to the reliability of the expert's conclusions, not whether the expert's methodologies or deductions are based upon principles that are sufficiently established to have gained general acceptance as reliable, there is no basis for a *Frye* hearing (*see Lipschitz v Stein*, 65 AD3d 573, 576 [2009]; *Nonnon v City of New York*, 32 AD3d 91, 103 [2006], *affd* 9 NY3d 825 [2007]).

With respect to the plaintiffs' cause of action alleging lack of informed consent for forgoing adjuvant therapy, an element of a cause of action based upon lack of informed consent is "some unconsented-to affirmative violation of the plaintiff's physical integrity" (*Hecht v Kaplan*, 221 AD2d 100, 103 [1996]). Public Health Law § 2805-d (3) states that "[f]or a cause of action therefor it must . . . be established that a reasonably prudent person in the patient's position *would not have undergone* the treatment or diagnosis if he had been fully informed" (emphasis added). Lack of informed consent does not apply where, as here, injuries allegedly resulted from a failure to undertake a procedure or a postponing of a procedure (*see Jaycox v Reid*, 5 AD3d 994, 995 [2004]).

Eng made a prima facie showing, as a matter of law, that he did not depart from accepted medical practice in referring the monitoring of the decedent's condition to Gusset (*see Wasserman v Staten Is. Radiological Assoc.*, 2 AD3d 713, 714 [2003]; *Bettencourt v Long Is. Coll. Hosp.*, 306 AD2d 425, 426 [2003]). In general, a physician's duty to the patient "may be limited to those medical functions undertaken by the physician and relied on by the patient" (*Chulla v DiStefano*, 242 AD2d 657, 658 [1997]). In response to Eng's prima facie demonstration of entitlement to judgment as a matter of law on this issue, the plaintiffs failed to raise a triable issue of fact. Although there is case law to the effect that joint liability may be imposed upon the referring physician where "the referring physician was involved in decisions regarding diagnosis and treatment to such an extent as to make them his or her own negligent acts" (*Mandel v New York County Pub. Adm'r*, 29 AD3d 869, 871 [2006]; *see Reyz v Khelemsky*, 44 AD3d 640, 643 [2007]), in this case, Eng did not undertake to monitor the decedent's general condition and left that function to Gusset. Gusset, not Eng,

ordered blood tests subsequent to surgery, and monitored the decedent's general symptoms. Under the circumstances, the Supreme Court properly denied that branch of Gusset's motion which was for summary judgment dismissing this cause of action (*see Schaub v Cooper*, 34 AD3d 268, 271 [2006]; *Wong v Tang*, 2 AD3d 840 [2003]).

That branch of the plaintiffs' motion which was for leave to renew was properly denied, since there was no reasonable justification for failing to submit the purportedly new evidence in opposition to the original motions (*see* CPLR 2221 [e]; *Brown Bark I, L.P. v Imperial Dev. & Constr. Corp.*, 65 AD3d 510 [2009]).

The parties' remaining contentions are without merit, or need not be addressed in light of our determination. Rivera, J.P., Leventhal, Belen and Austin, JJ., concur. **[Prior Case History: 2008 NY Slip Op 32107(U).]**