OPINION OF THE COURT
Peter M. Forman, J.
Dr. Joan Sincavage is a licensed psychologist employed by the New York State Office of Mental Health (OMH). Prior to the commencement of this proceeding, Dr. Sincavage evaluated respondent to determine whether he is a sex offender requiring civil management for purposes of article 10 of the Mental Hygiene Law. Based upon that evaluation, Dr. Sincavage concluded that respondent meets the criteria for the following diagnoses under the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5): (1) other specified paraphilic disorder (arousal *500 to non-consent),[1] and (2) other specified neurodevelopmental disorder (borderline intellectual functioning). Dr. Sincavage also diagnosed respondent with the condition of sexual preoccupation. This condition is also known as hypersexuality, which is recognized and defined in the glossary of DSM-5.
Dr. Sincavage also considered assigning respondent with a DSM-5 diagnosis of delusional disorder (erotomanic type). However, she concluded that this diagnosis should not be assigned “at this time” because “while there were elements in his distorted thinking that were consistent with such a delusion, there was also evidence to the contrary.” Dr. Sincavage qualified this determination by stating that it would be appropriate to revisit this issue if additional evidence is revealed in the future that would support a delusional disorder diagnosis.
Respondent now moves for an order precluding all testimony regarding the diagnoses of other specified paraphilic disorder (arousal to non-consent) and sexual preoccupation. In the alternative, respondent moves for a Frye hearing as to the admissibility of these diagnoses. Respondent also moves for an order precluding all testimony regarding any diagnosis that may be contained in OMH records that were created after the petition was filed in this article 10 proceeding. Finally, respondent moves for an order precluding all evidence regarding any diagnosis that has been considered but not assigned.
For the reasons stated herein, respondent’s motion for an order precluding any evidence that Dr. Sincavage considered, but did not assign, a delusional disorder diagnosis is granted, without prejudice to petitioner’s ability to revisit consideration of such a diagnosis if additional relevant evidence is revealed in the future. The remainder of respondent’s motion is denied.
Discussion
“The long-recognized rule of Frye v United States ... is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has ‘gained general acceptance’ in its specified field.” (People v Wesley, 83 NY2d 417, 422 [1994] [citation omitted].) “[T]he test is not whether a particular procedure is unanimously indorsed by the scientific community, but whether it is generally accepted] as *501 reliable.” (People v Middleton, 54 NY2d 42, 49 [1981]; see also Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762, 780 [2014] [“While the Frye test turns on acceptance by the relevant scientific community, we have never insisted that the particular procedure be unanimously indorsed by scientists, rather than generally acceptable as reliable” (internal quotation marks omitted)].)
“General acceptance does not necessarily mean that a majority of the scientists involved subscribe to the conclusion. Rather it means that those espousing the theory or opinion have followed generally accepted scientific principles and methodology in evaluating clinical data to reach their conclusions.” (Ratner v McNeil-PPC, Inc., 91 AD3d 63, 71 [2d Dept 2011], quoting Zito v Zabarsky, 28 AD3d 42, 44 [2d Dept 2006]; see also LaRose v Corrao, 105 AD3d 1009, 1009 [2d Dept 2013] [“The test’s limited purpose is to ascertain whether the expert’s conclusion is based upon accepted scientific principles, rather than simply the expert’s own unsupported beliefs”].) Therefore, “[t]he main purpose of a Frye inquiry is to determine whether the scientific deduction in a particular case has been sufficiently established to have gained general acceptance in a particular field, not ... to verify the soundness of a scientific conclusion.” (Alston v Sunharbor Manor, LLC, 48 AD3d 600, 602 [2d Dept 2008]; see also Lugo v New York City Health & Hosps. Corp., 89 AD3d 42, 56 [2d Dept 2011] [“Put another way, the court’s job is not to decide who is right and who is wrong, but rather to decide whether or not there is sufficient scientific support for the expert’s theory” (internal quotation marks and citation omitted)].)
“A court is only required to conduct an inquiry, concerning general acceptance, pursuant to Frye, in situations in which a party seeks to rely upon novel scientific, technical or other concepts involving expertise.” (Matter of Seventh Jud. Dist. Asbestos Litig., 9 Misc 3d 306, 311 [Sup Ct, Wayne County 2005].) “Otherwise stated, if a principal theory or methodology forming the basis for an expert opinion has been generally accepted in the relevant scientific community, it would not be novel, and therefore, not require a hearing or other inquiry by the court.” (Id.)
The party challenging the introduction of testimony based upon scientific principles has the initial burden of coming forward with information that makes a prima facie showing that the testimony rests upon a novel theory that is not gener *502 ally accepted within the relevant scientific community. (Santos v State Farm Fire & Cas. Co., 28 Misc 3d 1078, 1079 [Sup Ct, Nassau County 2010].) Once that initial showing has been met, “the burden then shifts to the proponent of the evidence to show by a fair preponderance of the credible evidence that there is sufficient general acceptance of its reliability.” (Id.; see also Frye v Montefiore Med. Ctr., 100 AD3d 28, 38 [1st Dept 2012] [holding that, once “a credible challenge to the underpinning of the expert theory has been raised,” the party offering that evidence “bears the burden of demonstrating its reliability”].)
Relying on State of New York v Kenneth T. (24 NY3d 174 [2014]), respondent asserts that a Frye hearing is mandated in this case because Dr. Sincavage’s opinion relies upon, inter alia, a diagnosis of other specified paraphilic disorder, which was known under earlier versions of the DSM as paraphilia not otherwise specified (collectively, paraphilia NOS). However, the court does not read Kenneth T. as vesting respondent with an automatic right to a Frye hearing challenging the reliability of a paraphilia NOS diagnosis. Nor does the court read Kenneth T. as relieving respondent from his obligation to make a prima facie showing that a diagnosis of paraphilia NOS is a novel theory that is not generally accepted within the relevant scientific community.
A proper understanding of Kenneth T. begins with an examination of Matter of State of New York v Shannon S. (20 NY3d 99 [2012]), which was a 4-3 decision handed down by the Court of Appeals two years before its decision in Kenneth T. In Shannon S., the State’s expert psychologist diagnosed the respondent with paraphilia NOS and hebephilia (sexual attraction to pubescent girls below the age of consent). The Court of Appeals acknowledged at the outset that “certain diagnoses may, of course, be premised on such scant or untested evidence and be so devoid of content, or so near-universal in their rejection by mental health professionals, as to be violative of constitutional due process and preclude their meaningful use in civil confinement proceedings.” (Id. at 106-107 [internal quotation marks and citation omitted].) However, the Court expressly excluded paraphilia NOS from that category of suspect diagnoses. Specifically, the Court stated:
“Paraphilia NOS, however, has been found to be a viable predicate mental disorder or defect that comports with minimal due process. Furthermore, *503 any issue pertaining to the reliability of paraphilia NOS as a predicate condition for a finding of mental abnormality has been viewed as a factor relevant to the weight to be attributed to the diagnosis, an issue properly reserved for resolution by the fact-finder. Any professional debate over the viability and reliability of paraphilia NOS is subject to the adversarial process which, by vigorous cross-examination, would expose the strengths and weaknesses of the professional medical opinions offered in reaching a considered legal determination as to whether a respondent suffers a mental abnormality, as defined by statute.” (Id. at 107 [internal quotation marks and citations omitted].)
In Shannon S., the dissent acknowledged that paraphilia NOS was listed in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR). The dissent also acknowledged that the DSM-IV-TR was “the standard classification used by mental health professionals in this country.” (Id. at 110.) However, without citing any legal or scientific authority for the proposition that the NOS categories that appeared in every section of DSM-IV-TR are somehow less reliable than any other DSM category, the dissent sought to diminish paraphilia NOS on the grounds that it “is listed in the DSM-IV-TR, but only as a ‘residual category’ for ‘Paraphilias that are less frequently encountered’ ” (id., citing DSM-IV-TR at 567). Additionally, despite its characterization of paraphilia NOS as “junk science devised for the purpose of locking up dangerous criminals,” the dissent did not point to any evidence that a diagnosis of paraphilia NOS lacks general acceptance in the psychiatric and psychological scientific community.[2]
 [3](Id.)
In 2014, the three judges who dissented in Shannon S. joined with Judge Rivera to form a four-Judge majority in State v Kenneth T? Citing that dissenting opinion, and no other legal or scientific authority, the Kenneth T. majority characterized paraphilia NOS as a “controversial diagnosis,” and expressed “grave doubt whether such a diagnosis would survive a Frye hearing.” (Kenneth T. at 186 [internal quotation marks omitted].) To the extent that these grave doubts stand in stark *504 contrast to the fact that the American Psychiatric Association has included paraphilia NOS as a recognized category in its authoritative guide on mental disorders, the Kenneth T. majority also continued to promote the suggestion, first put forth in the Shannon S. dissent, that paraphilia NOS is less reliable than other DSM categories because it has been included “only as a ‘catch-all’ category for paraphilias that are not specifically enumerated elsewhere in the manual.” (Id.)
Nonetheless, the Kenneth T. majority expressly declined to overrule Shannon S., stating “[w]e perceive no compelling justification for overruling Shannon S.’s holding that a diagnosis of paraphilia NOS was sufficient to support a finding of mental abnormality on the record in that case.” (Id. at 187.) The Kenneth T. majority also expressly stated that it was not reaching the issue of whether the diagnosis of paraphilia NOS has received general acceptance in the psychiatric community because, as in Shannon S., no Frye hearing was requested or held.
There is no fair reading of the majority opinion in Shannon S. that would support an argument that respondent is automatically entitled to a Frye hearing challenging the reliability of a paraphilia NOS diagnosis. Rather, Shannon S. held that paraphilia NOS is “a viable predicate mental disorder or defect” in an article 10 proceeding, and that
“any professional debate over the viability and reliability of paraphilia NOS is subject to the adversarial process which, by vigorous cross-examination, would expose the strengths and weaknesses of the professional medical opinions offered in reaching a considered legal determination as to whether a respondent suffers a mental abnormality, as defined by statute.” (Shannon S. at 107 [internal quotation marks omitted].)
And although Shannon S. was a 4-3 decision,
“the closeness of a vote in a precedential case is hardly determinative. It certainly should not be. Otherwise, every precedent decided by a bare majority is a nonprecedent—one to be followed if a later court likes it, and not to be followed if it does not like it.” (People v Hobson, 39 NY2d 479, 490 [1976] [citations omitted]; see also Semanchuck v Fifth Ave. & 37th St. Corp., 290 NY 412, 420 [1943] [“The authoritative force of a decision as a precedent in succeeding cases is not determined by the *505 unanimity or division in the court”].)
As previously noted, the Kenneth T. majority was comprised of the three dissenting Judges in Shannon S., plus Judge Rivera, who joined the Court a year after Shannon S. was decided. Consistent with well-settled precedent that “the accident of a change of personalities in the Judges of a court is a shallow basis for jurisprudential evolution” (People v Hobson at 491), the Kenneth T majority expressly declined to overrule Shannon S.[4] Therefore, despite any lingering doubts that the Shannon S. dissenters and Judge Rivera professed in Kenneth T. about whether a mental disorder that has long been recognized in the authoritative guide on mental disorders would withstand judicial scrutiny at a Frye hearing, respondent is not absolved of his obligation to make a prima facie showing that such a diagnosis is a novel theory that is not generally accepted within the relevant scientific community.
Before assessing whether respondent has made that prima facie showing, it is helpful to first review the history of paraphilia NOS as a recognized disorder in the DSM. Several of my colleagues who have been called upon to address the viability of a paraphilia NOS diagnosis in the aftermath of Kenneth T. have already done an admirable job of developing this history. (See e.g. State v Harry M., Sup Ct, Kings County, Aug. 11, 2015, Riviezzo, J., index No. 3482/2012; Matter of State of New York v Harris, 48 Misc 3d 950 [Sup Ct, Bronx County, Apr. 27, 2015, Gross, J.]; State v Ronald S., Sup Ct, Nassau County, Jan. 29, 2015, Corrigan, J., index No. 1557/ 2014.) The following synopsis borrows liberally from those opinions, with my gratitude to my colleagues for their hard work.
The DSM, which was first published by the American Psychiatric Association in 1952, classifies mental disorders. It is widely recognized as the standard diagnostic handbook used by psychiatrists and psychologists, in both clinical and forensic settings.
The third edition of the DSM, published in 1980, was the first edition to add “paraphilia” as a recognized mental disorder. The fourth edition of the DSM, published in 1994, continued to recognize “paraphilia” as a mental disorder. The third and fourth editions only contained criteria for a small number of *506 specifically named paraphilias. The third and fourth editions also included paraphilia NOS as a recognized mental disorder.
DSM-5 was published in 2013, and serves as the fifth and most current edition of the manual. It is the product of 13 years of rigorous study and scrutiny by a 28-member task force, 13 working groups comprised of more than 160 mental health and medical professionals who are leaders in their respective fields, and 300 advisers from 16 countries.
DSM-5 lists eight specifically named paraphilias,[5] and reorganizes paraphilia NOS into two new categories. Specifically, DSM-5 replaces “paraphilia not otherwise specified” with: “other specified paraphilia,” and “unspecified paraphilia.”
The “other specified” category applies when an examiner determines that a patient has a paraphilic disorder which is not specifically named in DSM-5. The “unspecified” category can be applied when a person is determined to satisfy the general criteria for a paraphilic disorder, but insufficient information exists for a specific diagnosis. The “unspecified” category can also be applied when a person has a mixture of paraphilias, and the examiner is not able to determine which is dominant. With respect to both of these categories, DSM-5 states:
“Many dozens of distinct paraphilias have been identified and named, and almost any of them could, by virtue of its negative consequences for the individual or for others, rise to the level of a paraphilic disorder. The diagnoses of the other specified and unspecified paraphilic disorders are therefore indispensable and will be required in many cases.” (DSM-5 at 685.)
Here, respondent has failed to make a prima facie showing that a diagnosis of “other specified paraphilia (arousal to non-consent)” is a novel theory that it is not generally accepted within the relevant scientific community. For instance, as evidence that “other specified paraphilia (arousal to non-consent)” is not generally accepted, respondent’s expert states that although “paraphilia coercive disorder” was one of the conditions that was considered for inclusion in DSM-5, ultimately it was not added to the list of eight specifically named paraphilic disorders.
*507 However, DSM-5 expressly acknowledges that dozens of distinct paraphilias have been identified and named, that almost any of them could rise to the level of a paraphilic disorder, and that “the diagnoses of the other specified and unspecified paraphilic disorders are therefore indispensable.” As the State points out in its opposition papers, expert witnesses have routinely provided testimony in federal and state courts regarding a diagnosis of paraphilia NOS (non-consent), including in civil confinement proceedings. (Meehan ¶ 25-28; see also Matter of State of New York v Harris, 48 Misc 3d 950, 966-967 [Sup Ct, Bronx County 2015; State v Harry M., Sup Ct, Kings County, Aug. 11, 2015, index No. 3482/2012 at 14-15] [both citing numerous state and federal court decisions rejecting Frye challenges to a paraphilia NOS diagnosis, and instead finding that a diagnosis of paraphilia NOS is generally accepted in the scientific community].) And as Justice Gross pointed out in Harris, respondent has failed to cite any federal or state appellate authority finding paraphilia NOS to be an unreliable diagnosis under the Frye standard.
Nonetheless, respondent asserts that a Frye hearing is necessary because the diagnosis of other specified paraphilic disorder (arousal to non-consent) has been sharply criticized within the psychiatric and psychological scientific community. In support of this argument, respondent cites to a number of articles, most of which have been written by Allen Frances, M.D., and Michael B. First, M.D. (Respondent’s mem of law at 5-7.)[6]
The most directly on-point of these articles was co-authored by Drs. Frances and First, and is entitled Paraphilia NOS, Nonconsent: Not Ready for the Courtroom (39 J of Am Acad of Psychiatry & L 555 [2011]). In that article, the authors acknowledge “the widespread use of paraphilia NOS, nonconsent” under DSM-IV-TR as a qualifying diagnosis in mental health proceedings involving the civil confinement of sexually violent predators, and that a diagnosis of “paraphilia NOS, nonconsent, has been widely used” by examiners to determine whether those sexually violent predators suffer from a mental abnormality. (Id. at 556.)
However, the authors argue that this widespread use is based upon a misunderstanding of the wording and intent of DSM-IV. Specifically, the authors argue that the paraphilia NOS non- *508 consent diagnosis has been misused by examiners due to “a misreading of the poorly worded . . . opening sentence of the DSM-IV-TR paraphilia section,” which they argue has caused examiners to make “the mistaken assumption that the text implies that the DSM-IV-TR recognizes the existence of an arousal pattern focused on the nonconsenting nature of the sexual behaviors.” (Id.)
There is no question that the diagnosis of paraphilia NOS (arousal to non-consent) has been the subject of criticism within the psychiatric and psychological community. But if the opinions expressed by these authors in their 2011 article accurately reflected the collective agreement of that community, then the DSM-5 would have undoubtedly included language clarifying this allegedly widespread misinterpretation of the DSM in proceedings involving the civil confinement of sexually violent predators. Yet no such language was added to DSM-5.
As Justice Gross cogently observed after conducting a five-day Frye hearing in Harris:
“This court acknowledges that unspecified paraphilic disorder has been the subject of much criticism by experts in the field of psychiatry . . . However, the mere fact that the diagnosis has been subject of debate does not warrant the conclusion that it is no longer generally accepted. The diagnoses contained within DSM-5 represent the collective agreement of the mental health community. Under Frye, the test of reliability does not require that the diagnosis be unanimously indorsed by the scientific community, but, rather, need only be generally accepted as reliable. Thus, unspecified paraphilic disorder need not be accepted by all experts in the field of psychiatry or psychology, just the general consensus. Accordingly, while some experts dispute its legitimacy, that does not render it an unreliable diagnosis. On the contrary, since DSM-5 represents the consensus of the psychiatric community, the decision to include unspecified paraphilia as a mental health diagnosis is clear indication of its general acceptance.” (Harris at 963 [internal quotation marks and citations omitted].)
The evidence presented on this motion establishes that the DSM is the authoritative guide on mental disorders, and that the DSM only recognizes those disorders that are generally accepted in the psychiatric and psychological community. That *509 evidence also demonstrates that every mental disorder identified in the DSM includes a “not otherwise specified” category, and that paraphilia NOS has been a recognized disorder ever since DSM-3 was published in 1980.
When DSM-5 was published, after 13 years of scrutiny by the scientific community, it continued to recognize eight specifically named paraphilia, while reorganizing the paraphilia NOS into two categories (other specified and unspecified). DSM-5 expressly states that these two categories of paraphilia NOS were retained because “many dozens of distinct paraphilias have been identified and named.” DSM-5 also expressly states that an examiner’s continued ability to diagnosis “other specified” and “unspecified” paraphilic disorders was indispensable, and that such a diagnosis “will be required in many cases.”
Evidence of paraphilia NOS, including paraphilia NOS (arousal to non-consent), has also been routinely admitted in state and federal courts, including in civil confinement proceedings. Notably, despite the skepticism expressed by the Shannon S. dissenters, respondent has not identified any federal or state appellate decision finding paraphilia NOS to be an unreliable diagnosis under the Frye standard. And despite scholarly criticism of paraphilia NOS (non-consent) diagnoses as being based upon a misreading of DSM-IV-TR, no language was added to DSM-5 suggesting that these “widely-used” diagnoses lack general acceptance in the psychiatric and psychological community. Therefore, respondent’s motion to preclude or, in the alternative, for a Frye hearing, is denied as to other specified paraphilia (arousal to non-consent). (Ellis v Eng, 70 AD3d 887, 892 [2d Dept 2010] [“where, as here, the challenge is to the reliability of the expert’s conclusions, not whether the expert’s methodologies or deductions are based upon principles that are sufficiently established to have gained general acceptance as reliable, there is no basis for a Frye hearing”]; see also Lipschitz v Stein, 65 AD3d 573, 576 [2d Dept 2009] [“Frye is not concerned with the reliability of a certain expert’s conclusions, but instead with whether the expert’s deductions are based on principles that are sufficiently established to have gained general acceptance as reliable” (internal quotation marks and citations omitted)].)[7]
*510 Respondent has also moved to preclude any testimony regarding Dr. Sincavage’s diagnosis of sexual preoccupation or, in the alternative, for a Frye hearing as to the admissibility of that diagnosis. The affidavit provided by respondent’s expert is limited to the diagnosis of other specified paraphilia (arousal to non-consent), and does not address the diagnosis of sexual preoccupation. Nonetheless, respondent’s memorandum of law asserts that this evidence should be precluded because sexual preoccupation is not a recognized condition under DSM-5, and because Dr. Sincavage has failed to clearly define the parameters of this condition.
Sexual preoccupation is also known as “hypersexuality,” which is a mental condition that is recognized and defined in the glossary of DSM-5. The DSM-5 paraphilia chapter states that hypersexuality can be a comorbidity of paraphilias. In the context of an article 10 trial, hypersexuality/sexual preoccupation has been deemed relevant to the question of whether a detained sex offender suffers from a mental abnormality. (See Matter of State of New York v Richard TT., 132 AD3d 72 [3d Dept 2015] [respondent exhibited “a high degree of sexual preoccupation and a high degree of . . . hypersexuality” (internal quotation marks omitted)]; Matter of State of New York v Derrick B., 68 AD3d 1124 [2d Dept 2009] [finding that the jury’s verdict on mental abnormality was supported by expert testimony that respondent exhibited, inter alia, hypersexual behavior]; but see Matter of State of New York v Gen C., 128 AD3d 467, 467 [1st Dept 2015] [finding that “the State presented no evidence that hypersexuality/sexual preoccupation is a condition that predisposes one to commit a sex offense and results in serious difficulty in controlling the sexually offending conduct”].) Therefore, respondent’s motion to preclude or, in the alternative, for a Frye hearing, is denied as to the hypersexuality/sexual preoccupation diagnosis.
Respondent’s motion to preclude all testimony regarding any diagnosis that may be contained in OMH records that were created after the petition was filed in this article 10 proceeding essentially is denied as speculative and premature. That mo *511 tion is denied without prejudice to respondent’s right to seek preclusion of any specific prejudicial, irrevelant, or otherwise inadmissible information contained in OMH records.
Finally, respondent’s motion to preclude all evidence regarding any diagnosis that Dr. Sincavage has considered, but has not assigned, is granted. This motion is granted without prejudice to petitioner’s ability to seek reconsideration if additional relevant evidence justifying such a diagnosis is revealed in the future. It is therefore, ordered, that respondent’s motion to preclude all evidence regarding any diagnosis that Dr. Sincavage has considered, but has not assigned, is granted. This motion is granted without prejudice to petitioner’s ability to seek leave to reconsider if relevant evidence is revealed in the future; and it is further ordered, that the remainder of respondent’s motion is denied.

. A paraphilia is a mental disorder involving an abnormal sexual interest which is persistent and either intense or preferential. In order for a paraphilia to rise to the level of a paraphilic disorder, it must cause distress or impairment to the individual or cause harm to others.

. DSM-IV-TR identified 47 NOS categories, one for each disorder in the manual, including paraphilia. (Matter of State of New York v Harris, 48 Misc 3d 950 [Sup Ct, Bronx County 2015].)

. Judge Rivera joined the Court in 2013.

. The Hobson court also observed that “it would have been scandalous for a court to shift within less than two years because of the replacement of one of the majority in the old court by one who now intellectually would have preferred to have voted with the old minority and the new one.” (Id. at 491.)

. The eight specifically named paraphilic disorders are: voyeuristic disorder, exhibitionist disorder, frotteuristic disorder, sexual masochism disorder, sexual sadism disorder, pedophilic disorder, fetishistic disorder, and transvestic disorder.

. Dr. Frances and Dr. First were the chair and editor of the text and criteria in DSM-IV.

. To the extent that State v Ronald S. can be read as suggesting that any psychiatric or psychological theory is immune from a Frye inquiry because psychiatry and psychology are established fields, this court does not-paint with that broad of a brush. (See e.g. Nonnon v City of New York, 32 *510 AD3d 91, 102-103 [1st Dept 2006], affd 9 NY3d 825 [2007] [“Courts have also applied Frye to novel psychological theories” (citations omitted)].) Indeed, this court recently conducted a five-day Frye hearing in State v Roderick L. (Sup Ct, Dutchess County, index No. 5545/2013), regarding the use of the Hare PCL-R instrument in a mental abnormality trial. Therefore, this court merely finds that respondent has failed to make a prima facie showing that a diagnosis of other specified paraphilia (non-consent) rests upon a novel theory that is not generally accepted within the relevant scientific community.