| **Minevich v Bandari** |
|:---:|
| 2024 NY Slip Op 33723(U) |
| October 21, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 504014/2020 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 21st day of October 2024.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
ALEKSANDR MINEVICH,

      Plaintiff,

  -against-

DON BANDARI, M.D. and BROOKLYN
CARDIOLOGY, P.C.,

      Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 504014/2020
Mo. Seq. 2

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: 39 – 40, 41 – 63, 67 – 69, 70 – 71, 72 – 73

Defendants Don Bandari, M.D. ("Dr. Bandari") and Brooklyn Cardiology, PC ("Brooklyn Cardiology") move[1] (Seq. No. 2) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint in its entirety. Plaintiff opposes the motion.

Plaintiff commenced this action on February 18, 2020, asserting claims of medical malpractice and lack of informed consent in connection with treatment rendered from March 9, 2018 through August 30, 2018.

At the time of the events in question, Plaintiff was 34 years old and had a history of hypertension, diabetes, and obesity. He was referred to Brooklyn Cardiology by non-party Richard Fisse, M.D. for blood pressure management.

Plaintiff was first evaluated by Dr. Bandari at Brooklyn Cardiology on March 9, 2018. Plaintiff noted "chest pain/pressure/tightening" on his medical history, but on examination he denied any current chest pain, shortness of breath, or palpitations. Dr. Bandari recorded a normal cardiovascular exam with no murmurs,

---

[1] As admitted by the movants, Brooklyn Cardiology, PC is the name of Dr. Bandari's professional practice. They move jointly for summary judgment in an individual and corporate capacity.

1

[* 1]

gallops, or rubs, and normal heart sounds. An echocardiogram (EKG) showed "cardiomyopathy, left atrium dilated mildly, trace mitral regurgitation, trace tricuspid regurgitation, ejection fraction [percentage of blood leaving the heart on each contraction] 52%." The physician prescribed Losartan and scheduled a treadmill exercise stress test.

On March 12, a stress test was performed for 4:25 minutes and "terminated due to fatigue," according to Dr. Bandari's records. Dr. Bandari recorded that heart rate and blood pressure were within normal limits, patient had "mild shortness of breath at peak exercise," the EKG was negative for ischemia, and overall function was normal.

Plaintiff saw Dr. Bandari for periodic appointments from April through August. On each visit, he recorded Plaintiff had no complaints of chest pain, shortness of breath, or palpitations, and his physical exam was clear of murmurs, gallops, rubs, or abnormal sounds. On April 16, Plaintiff was prescribed Hyzaar in addition to his other medications and directed to use a home blood pressure monitoring device.

On June 4, Plaintiff had an abnormal EKG which did not rule out anterior infarct. His chart from that date listed unstable angina, silent myocardial ischemia, and occlusion of bilateral carotid arteries under "active problems." His plan of care was to continue current medication and exercise.

On July 9, Plaintiff's blood pressure was elevated to 160/110, and an abnormal EKG read "inferior infarct, age undetermined." Dr. Bandari prescribed Exforge in place of Hyzaar. Plaintiff also had blood drawn on that date, the results of which returned on July 11, showing elevated blood sugar, cholesterol, and triglycerides.

Plaintiff had his last visit with Dr. Bandari on August 30, at which time his blood pressure was 145/95. His cardiovascular exam was recorded as normal and he denied chest pain, shortness of breath, or palpitations. Dr. Bandari prescribed Janumet, returned him to Hyzaar, and advised to lose weight and "follow up for blood pressure."

On September 1, Plaintiff presented to the Coney Island Hospital emergency department with chest pain and shortness of breath. He was diagnosed with a ST-elevation myocardial infarction. He was transferred to

2

[* 2]

SUNY Downstate and underwent cardiac catheterization and angiogram, which revealed 100% stenosis of the proximal third of the left anterior descending artery. On September 12, he underwent a coronary artery bypass grafting at SUNY Downstate and was discharged home on September 15. He continues to be treated for coronary artery disease and congestive heart failure.

Plaintiff alleges Dr. Bandari and Brooklyn Cardiology departed from the standard of care by failing to diagnose and treat his cardiovascular disease, including failure to prescribe proper medications, perform a sufficient stress test, and timely refer him to the hospital for cardiac catheterization. Plaintiff further alleges that these departures proximately caused his myocardial infarction on September 1 and resulting heart damage.

"In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

> "The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].

In support of this motion, Dr. Bandari submits an expert affirmation from Mark A. Goodman, M.D. ("Dr. Goodman"), a licensed physician certified in internal medicine and cardiovascular disease, as well as medical

3

records and deposition transcripts.

Based on the record and his relevant expertise, Dr. Goodman opines that all treatment and care rendered by Dr. Bandari to the Plaintiff from March 9, 2018 through August 30, 2018 was in accordance with good and accepted medical practice. The expert opines that on his first visit, Dr. Bandari appropriately performed an EKG and scheduled a nuclear stress test based on Plaintiff's risk factors for coronary artery disease. He opines that the result of the March 12 stress test was within normal limits, showing "good exercise capacity of 10.4 mets," 88% of the maximum predicted heart rate, with mild shortness of breath and elevated blood pressure at peak exercise. The expert also notes his EKG was negative for ischemia and opines there was no evidence of abnormalities from his imaging studies. The expert opines that "it is within he standard of care for a cardiologist to rely upon a normal nuclear stress test for up to two years," so no repeat or additional testing was required.

Dr. Goodman also opines that based on the normal results of the stress test, his ejection fraction of 52% (which the expert opines was within normal range), and Dr. Bandari's personal review of the EKG strips, it was not a departure from the standard of care to not refer Plaintiff to a hospital for cardiac catheterization. The expert opines that some abnormalities on Plaintiff's EKG, suggesting evidence of an existing myocardial infarction, were "wrongly reported by the computer" and not evidenced by Dr. Bandari's own interpretation of the results. He notes that on each visit, Plaintiff reported "denial of chest pain, shortness of breath, or palpitations." Therefore, he opines that cardiac catheterization was not indicated until his presentation at the emergency department on September 1, at which time the expert notes he reported chest pains that began "approximately five hours before," a new symptom that was not present at his August 30 appointment with Dr. Bandari.

With respect to treating Plaintiff's hypertension, the primary reason he was referred to Brooklyn Cardiology, Dr. Goodman opines that Dr. Bandari appropriately evaluated him and prescribed proper medications. Dr. Goodman opines that the prescription of Hyzaar on April 16 is an "accepted means to control hypertension," and opines that he appropriately advised the patient to monitor his blood pressure with a home machine. The expert notes that Plaintiff's blood pressure was decreasing on subsequent visits to Dr. Bandari until July 9, at which time Dr. Bandari substituted his Hyzaar prescription for Exforge. The expert opines that this was

4

[* 4]

also a reasonable medication, and that the doctor appreciated his "fluctuating blood pressure levels" and responded appropriately. He further opines that aspirin or antiplatelet therapy were never indicated due to the lack of symptoms of coronary artery disease.

Dr. Goodman opines that any treatment for diabetes was not within Dr. Bandari's duties or obligations as a cardiology specialist, but rather should be managed by the patient's primary care physician or endocrinologist. Notwithstanding, the expert opines that Dr. Bandari "exercised reasonable judgment" by advising Plaintiff to lose weight to control his diabetes.

On the issue of proximate causation, Dr. Goodman opines that Plaintiff's myocardial infarction on September 1 was a result of his obesity and uncontrolled diabetes, not by any improper diagnosis, treatment, or departure from the standard of care by Dr. Bandari. The expert opines that such an infarct can simply be "unpredictable," and that there were no apparent symptoms or red flags in the time he was treating with Dr. Bandari that should have prompted earlier hospitalization or catheterization, as it occurred "six months after a normal nuclear stress test, during which time he did not once complain of chest pain, shortness of breath, or palpitations." He therefore opines that the heart attack was sudden, caused by his other comorbidities, and could not have been prevented by Dr. Bandari during his treatment of Plaintiff from March through August.

The expert further opines that there is no causal link between Plaintiff's heart attack and the allegation Dr. Bandari failed to prescribe a statin (cholesterol-lowering) medication. He opines that although it is possible to show improvement sooner, "for most patients, plaque regression does not occur until approximately six months or more after starting treatment with a statin." Therefore, even if a statin had been prescribed after his July 9 blood test results, the expert opines it most likely would not have reduced his risk for the heart attack on September 1.

Dr. Bandari has established prima facie entitlement to summary judgment, based on the expert submission setting forth that his examinations, medications, and recommendations to Plaintiff complied with the standard of care. Dr. Bandari's expert further established prima facie that no alleged departures from the standard of care were the proximate cause of Plaintiff's September 1 heart attack and related injuries. The burden therefore shifts to Plaintiff to raise an issue of fact.

5

On the issue of informed consent, based on the submissions, Plaintiff did not receive a treatment, procedure, or surgery, or a diagnostic procedure which involved "invasion or disruption of the integrity of the body" pursuant to N.Y. Pub. Health Law § 2805-d. "Lack of informed consent does not apply where, as here, injuries allegedly resulted from a failure to undertake a procedure or postponing of a procedure" (*Ellis v Eng,* 70 AD3d 887 [2d Dept 2010]). Further, the claims asserted by Plaintiff regarding appropriate medications do not arise from a failure to disclose risks, benefits, or alternatives, nor do Plaintiff's alleged injuries arise from any affirmative, unconsented-to treatment, but rather an alleged failure to prescribe additional cholesterol-lowering medication (*see Ellis,* at 892; *Lyons v Vassar Bros. Hosp.,* 30 AD3d 477 [2d Dept 2006]). Thus, the movants have established prima facie that this claim is not applicable to the action.

In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], certified in internal medicine and cardiovascular disease. Plaintiff also submits additional medical and billing records.

Based on the record and their relevant expertise, Plaintiff's expert opines that Dr. Bandari departed from the standard of care by failing to diagnose and treat Plaintiff for coronary artery disease. Specifically, Plaintiff's expert opines that Dr. Bandari failed to perform the March 12 stress test for an appropriate duration. The expert opines that a proper stress test "allows the patient to reach their maximal effort capacity in 6-12 minutes." However, the expert notes that the EKG strip of the stress test was 3:49 minutes, and Dr. Bandari's records indicate the duration of the test was less than 5 minutes. Plaintiff's expert opines that this "shortened and inadequate" stress test did not provide an accurate assessment, and therefore Dr. Bandari improperly relied on these results to rule out suspicion of coronary artery disease.

Plaintiff's expert opines that the patient had multiple risk factors of coronary artery disease, including family history, hypertension, high cholesterol, obesity, diabetes, and inactive lifestyle. The expert also disputes the movant's statements that he never presented with complaints of chest pain, noting that he did report "chest pain/pressure/tightening" in his medical history on his first visit to Dr. Bandari (*see* Exhibit J, at 66), even if he denied active pain during his examinations. The expert counters the opinion of Dr. Goodman that the stress test

6

[* 6]

was an adequate basis to assume Plaintiff's results were normal, opining that the test itself was too short and "even if performed optimally," such tests are not 100% effective in ruling out cardiovascular disease, especially in light of the EKG showing cardiomyopathy, possible infarct, and an ejection fraction of 52%. Contrary to the movant's expert opinion, Plaintiff's expert opines that this ejection fraction is below the normal range (55-70%) for a man in his 30s.

Plaintiff's expert further notes that on June 4, 2018, Plaintiff had another EKG with abnormal findings which "was unable to rule out anterior infarction." On July 9, his EKG showed an "inferior wall MI which was not acted on." Plaintiff's expert opines that if Dr. Bandari believed, as stated by the expert, that these abnormal EKG findings were the result of a computer error, the proper course of action was to perform a repeat EKG study or order further testing. The expert opines that based on all these factors – Plaintiff's history of chest pain, risk factors, abnormal EKG results, and ejection fraction – the standard of care required Dr. Bandari to refer him for more aggressive cardiac workup, including cardiac catheterization. In the expert's opinion, Dr. Bandari departed from the standard of care by not referring him for such tests as early as March 12, June 4, or July 9.

Plaintiff's expert also cites the fact that Dr. Bandari's chart and billing records indicate a diagnosis of "silent myocardial ischemia" on March 12 and "unstable angina" on June 4 and July 9, both of which the expert opines are urgent medical problems which required referral to an emergency department for cardiac catheterization.

Additionally, Plaintiff's expert opines that Dr. Bandari departed from the standard of care by failing to prescribe a statin medication in response to his July 11 blood test results. The expert notes that Plaintiff's cholesterol was 249 (target 100) and his triglyceride levels were also elevated. The expert opines that the standard of care was to add a cholesterol-lowering medication to his treatment.

On the issue of causation, Plaintiff's expert opines that the primary alleged departure – failing to refer Plaintiff to the hospital for cardiac catheterization upon his March 12, June 4, and/or July 9 examinations – was a proximate cause of his heart attack on September 1. The expert opines that earlier treatment at the emergency department "would have resulted in cardiac catheterization being performed," and blockages of his arteries could

7

[* 7]

have been detected and repaired before the development of a ST-elevation myocardial infarction. The expert counters Dr. Goodman's opinion that this STEMI heart attack was unpredictable and unavoidable, opining that Dr. Bandari's alleged failure to timely diagnose and treat his cardiovascular condition deprived him of a substantial chance of avoiding this outcome. The expert further opines this departure was a proximate cause of his resulting heart damage following the heart attack.

Plaintiff's expert also counters Dr. Goodman's opinion that a statin medication would not likely prevent Plaintiff's heart attack. The expert opines that this medication "would have slowed the build-up of plaque" in Plaintiff's arteries, and this plaque build-up was a direct cause of his heart disease progressing to the September 1 myocardial infarction. Thus, the expert opines that Dr. Bandari's failure to prescribe a statin medication proximately caused his injuries.

Plaintiff has raised multiple issues of fact as to the alleged departures of Dr. Bandari in his treatment of Plaintiff, including whether he appropriately performed and relied on the results of the March 12 stress test, whether he properly evaluated Plaintiff's symptoms and EKG results, whether he prescribed all necessary medications, and whether Plaintiff should have been referred to a hospital for cardiac catheterization. Additionally, Plaintiff has raised issues of fact sufficient to defeat Dr. Bandari's prima facie showing on proximate causation, offering a conflicting opinion on whether the progression of Plaintiff's heart disease to a STEMI heart attack could have been avoided or slowed with earlier detection, treatment, and/or medication.

The movants argue in reply that the opinions of Plaintiff's expert are not supported by the record. Plaintiff's expert based their opinions, in part, on the fact Dr. Bandari used codes and notations of "unstable angina" and "silent myocardial ischemia" on certain dates, along with other "active problems" (*see* Defendant's Exhibit F, at 41-42; Plaintiff's Exhibit 1). Dr. Bandari testified these conditions appeared in the records for insurance approval of diagnostic tests – to rule out said conditions – and do not represent Plaintiff's actual diagnoses on those dates (*see* Dr. Bandari deposition tr, at 49-50). Regardless, any discrepancy in the record regarding Plaintiff's diagnosed or suspected conditions presents an issue of fact requiring jury resolution.

Plaintiff does not oppose the branch of the motion seeking to dismiss the cause of action for lack of

8

informed consent. Accordingly, the defendants' motion is granted to the extent of dismissing the cause of action for lack of informed consent only.

It is hereby:

**ORDERED** that Defendants Dr. Bandari and Brooklyn Cariology's motion (Seq. No. 2) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint, is **GRANTED TO THE EXTENT** of dismissing Plaintiff's claim for lack of informed consent, and the motion is otherwise **DENIED.**

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

9

[* 9]